IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MOHAMMAD REZA SALAMI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:07CV621 |
| ) | |
| JOSEPH MONROE, Dean of the College of ) | |
| Engineering, and NORTH CAROLINA A&T ) | |
| STATE UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Beaty, Chief Judge.

This case involves claims of discrimination on the basis of national origin and religion under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. The claims are brought by Mohammad Salami ("Salami" or "Plaintiff") who is proceeding *pro se* against his employer, North Carolina A&T State University ("A&T") and Joseph Monroe ("Monroe"), presumably, in his individual and official capacity as the Dean of the College of Engineering (together "Defendants"). Defendants A&T and Monroe have filed a Motion to Dismiss [Doc. #13] seeking dismissal of several of Plaintiff's claims. For the reasons discussed below, Defendants' motion will be GRANTED.

I. FACTUAL BACKGROUND

This is Plaintiff's second federal action filed in the Middle District of North Carolina against A&T involving claims of employment discrimination. Because res judicata is an issue, the substance of the first action is detailed below.

In Plaintiff's first action (hereinafter "Salami I") Plaintiff alleged breach of contract and discrimination and retaliation on the basis of national origin and religion in violation of Title VII and 42 U.S.C. § 1983. Count I of the Complaint in Salami I alleged that Plaintiff, a professor at A&T of Iranian origin and a Muslim, had accepted an offer to serve as Associate Dean for the 2001 - 2002 school year, and that in December 2001, after the events of September 11, 2001, Plaintiff was demoted to Professor. Count II alleged breach of contract for his demotion. Count III alleged that after Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) regarding his demotion, A&T retaliated against him by stopping the funding of the Civil Infrastructure Research Institute (CIRI), a post-graduate research department founded by Plaintiff. Plaintiff also alleged that A&T employees including Dean Monroe further retaliated against him by failing to timely approve his research proposal that sought funding from the Federal Aviation Administration (FAA) regarding a project to take place at Piedmont Triad International Airport (PTIA).

After Plaintiff's breach of contract claim was dismissed with consent, the unlawful discrimination and retaliation claims went to a jury. The jury answered "no" to the following questions:

> (1) Was the Plaintiff's national origin and/or religion a determinative factor in the Defendant's decision to remove him as Associate Dean of the College of Engineering in December?
>
> . . . .
>
> (2) Was the Plaintiff's filing of charges of discrimination with the [EEOC] and/or filing of this lawsuit a determinative factor in the Defendant's failure to approve:
>     A. Research Space?

2

>           B. The Civil Infrastructure Research Institute?
>
> . . . .
>
>           A. Plaintiff's proposal concerning the Federal Aviation
>           Administration and Piedmont Triad International Airport?
>           B. Plaintiff's proposal concerning Caterpillar, Inc.?

The jury returned a verdict in favor of A&T on April 27, 2005. Plaintiff thereafter appealed and the Fourth Circuit Court of Appeals affirmed the Judgment on June 28, 2006.

In the instant action Plaintiff, who is now proceeding *pro se*, filed an Amended Complaint [Document #7] on August 24, 2007. The Amended Complaint contains 15 claims for relief. Claim 1 alleges that the Defendants violated Plaintiff's "academic freedom." Claims 2 and 15 allege discrimination and retaliation claims pursuant to Title VII on behalf of three other Iranian Americans who were allegedly wrongfully discharged from employment at A&T. Claims 3 - 14 appear to assert claims against Defendants for violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 and for retaliation under Title VII. Claims 9 and 14 also assert claims for defamation of character.

Defendants filed a Motion to Dismiss and/or Motion for Summary Judgment [Doc. #13] on October 8, 2007. Defendants seek dismissal of Claim 1 for failure to state a claim pursuant to Rule 12(b)(6) and dismissal of Claims 2 and 15 for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on portions of Claim 1, and Claims 3, 4, 6, 10, 11, and 12, which appear to assert claims based upon 42 U.S.C. § 1983 and Title VII. Defendant also seeks summary judgment as to Claims 9 and 14 which assert claims of defamation of character. In seeking summary judgment as to the aforementioned claims, Defendants argue that those

claims are barred by res judicata.[1]  The Court now turns to address each of the Defendants' arguments to determine which, if any, of Plaintiff's claims should be dismissed.

II.  DISCUSSION

    A.  Res Judicata

Defendants argue that the claims and issues in portions of Claim 1 and Claims 3, 4, 6, 9, 10, 11, and 12 alleging civil rights violations pursuant to 42 U.S.C. § 1983 and retaliation under Title VII were previously litigated in Salami I and are therefore barred by the doctrine of res judicata.  "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  Brown v. Felsen, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209, 60 L. Ed. 2d 767 (1979).  "Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."  Id.   The doctrine of res judicata encompasses two concepts: (1) claim preclusion and (2) issue preclusion, or collateral estoppel.  The rules of claim preclusion provide that if the current litigation arises from the same cause of action or claim for relief as the first action, then the judgment in the prior action bars litigation not only of every matter actually litigated, but of every claim that could have been asserted.  Orca Yachts, L.L.C. v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002); 18 Moore's Federal Practice § 131.21 (3d

---

[1] Defendants have framed their res judicata defense in the context of a motion for summary judgment under Rule 56.  However, because the res judicata defense appears from the face of the Amended Complaint and raises no disputed issues of fact, the Court will construe Defendants' Motion to Dismiss and/or Motion for Summary Judgment as simply a Motion to Dismiss under Rule 12(b)(6).  See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (stating that the affirmative defense of res judicata may be raised under Rule 12(b)(6) if it clearly appears on the face of the complaint, and that a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact).

4

ed. 2008). In order for res judicata to bar an action, there must be "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981). As for the second element, the Fourth Circuit has "adopted a transactional approach to the identity of claims question - 'the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990) (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)). For this purpose, "it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." Harnett, 800 F.2d at 1313.

"[I]ssue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties. Issue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily determined by a court of competent jurisdiction in the first litigation." Orca Yachts, 287 F.3d at 318 (internal quotations and citations omitted). Issue preclusion applies when "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication." 18 Moore's Federal Practice § 132.04[1][b][i] at 132-145 (3d ed. 2008).

There can be no doubt that Salami I was a final judgment on the merits since a judgment was entered for A&T following a jury trial and the judgment was affirmed by the Fourth Circuit Court of Appeals. As for the identity of the parties, Plaintiff and A&T were both named parties

5

in Salami I.  Monroe was not a party in Salami I.  However, in the Salami I Complaint, Plaintiff alleged that "Dr. Joseph Monroe [was] an agent and employee" of A&T.  "[T]he privity requirement assumes that the person in privity is 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'"  Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997) (quoting Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 493 (4th Cir. 1981).  Thus, Monroe in his official capacity is in privity with A&T for purposes of res judicata.  However, the Fourth Circuit has held that "a government employee in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."  Andrews v. Daw, 201 F.3d 521, 526 (4th Cir. 2000).  Nevertheless, issue preclusion "can be used as a shield by a new defendant against a plaintiff who was a party to the former litigation." 18 Moore's Federal Practice § 131.21 (3d ed. 2008) at 132-146; see also Whitley v. Seibel, 676 F.2d 245, 248 n.1 (7th Cir. 1982) (same) (citing Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)); Thurston v. United States, 810 F.2d 438, 445 (4th Cir. 1987) ("Collateral estoppel may be used defensively if the plaintiff had a full and fair opportunity to litigate the issue in the previous suit.").  Thus, issues raised in Salami I against A&T may also be barred as against Monroe in his individual capacity in the instant action.

In response to Defendants' res judicata argument, Plaintiff contends that all of the retaliation directed toward him occurred after the final judgment was rendered in his prior discrimination and retaliation court proceeding.  The Court finds, however, that Plaintiff's Amended Complaint in the instant action does little more than reassert allegations that were

6

previously litigated in Salami I.  Count One of the Salami I Complaint alleged that Plaintiff accepted an offer to serve as Associate Dean for the 2001 - 2002 year and in December 2001, after the events of "9/11," Plaintiff was demoted by Dean Monroe to Professor.  Count III alleged that after Plaintiff filed a complaint with the EEOC regarding his demotion, A&T retaliated against him by stopping the funding of the CIRA, a post-graduate research department founded by Plaintiff.  In Salami I, the jury considered whether Plaintiff was discriminated against when he was removed from his position as Associate Dean of the College of Engineering and whether Plaintiff was unlawfully retaliated against when he was denied approval of research space, the CIRI, the FAA proposal, the PTIA proposal, and the Caterpillar proposal.  The Court notes that Plaintiff further alleged that it was Monroe who terminated three Iranian-American employees following the events of September 11, 2001, and that Monroe, acting as Dean of the College of Engineering had discriminated and retaliated against him by demoting Iranian-American employees and failing to approve his PTIA research proposal.  The Court finds that these claims and issues were exhaustively litigated in Salami I, but are, nevertheless, being raised again in the instant action in Claims 1, 3, 4, 6, 10, 11, and 12.  Therefore, the Court concludes that Plaintiff is collaterally estopped from suing A&T and Monroe in both his official and individual capacities.  Accordingly, to the extent that they are based upon allegations that were previously litigated in Salami I, Claims 1, 3, 4, 6, 10, 11, and 12 alleging violations of civil rights under § 1983 and retaliation under Title VII will be dismissed.[2]

---

[2] The Court notes, however, that portions of Plaintiff's Amended Complaint appear to assert some new allegations of discrimination and retaliation that were not the subject of Salami I.  For example, although much of Claim 1 is barred by res judicata, Claims 1 and 5 also allege that Plaintiff was retaliated and/or discriminated against in that he received the lowest salary

7

Claims 9 and 14 assert defamation claims based on statements allegedly made by Chancellor Renick. Specifically, Plaintiff alleges that Chancellor Renick made statements to the Piedmont Triad International Airport Authority Management that Plaintiff was "out of control." These same statements were at issue in Salami I and were offered as evidence in support of Plaintiff's retaliation claim. Therefore, to the extent that Plaintiff's allegations in Claims 9 and 14 arise out of the same transaction or series of transactions as those litigated in Salami I, those claims will also be dismissed.[3]

B. Lack of Standing

In addition to the arguments discussed above, Defendants argue that Claims 2 and 15 should be dismissed for lack of standing because Plaintiff alleges discrimination and retaliation claims on behalf of other Iranian-Americans who were allegedly wrongfully discharged. The Court notes that it is unclear exactly what Plaintiff is asserting here. However, in Claim 2 Plaintiff alleges that two Iranian faculty members and an Iranian lab manager were wrongfully terminated from their positions at A&T. Plaintiff further alleges that one such faculty member

---

raise in the College of Engineering for the 2006 - 2007 school year. Further, Claim 7 asserts retaliation and discrimination after the conclusion of Salami I and the appointment of a new Chancellor. Claims 1 and 8 assert that Defendants have retaliated against Plaintiff following the conclusion of Salami I by assigning him to teach classes below his qualifications. Claim 13 asserts retaliation with respect to Monroe's handling of Plaintiff's post tenure review. Because portions of Claim 1 and Claims 5, 7, 8 and 13 do not involve the same claims or issues that were litigated in Salami I, these claims are not barred by res judicata. Therefore, to the extent that the remainder of Claim 1 and Claims 5, 7, 8, and 13 will not be dismissed *infra* Part II.C for failure to state a claim upon which relief can be granted, those claims will go forward.

[3] The Court also notes that the statute of limitations for defamation has long expired. See N.C. Gen. Stat. § 1-54(3) (2001) (stating that the statute of limitations for actions for libel or slander is one year).

was successful in an unrelated suit against A&T. Claim 15 reads, "[t]he purpose of this Charge is to request for [sic] a formal investigation to be initiated against Dean Monroe and A&T Administration for their refusal to review and approve the authorization papers for Dr. Baseghi who was invited to research collaboration [sic]. . .". (Amended Complaint ¶ 61)

It is unclear to the Court whether Plaintiff is attempting to assert claims on behalf of the other faculty members, or if he is simply offering these allegations as evidence of discriminatory and retaliatory conduct. Nevertheless, to the extent that Plaintiff is asserting discrimination and retaliation claims on behalf of individuals other than himself, Plaintiff lacks standing to assert these claims. "[F]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation.'" Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002) (quoting Singleton v. Wulff, 428 U.S. 106, 113, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976)). "To overcome the prudential limitation on third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between [himself] and the person whose right [he] seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." Freilich, 313 F.3d at 215 (citing Powers v. Ohio, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 1370-71, 113 L. Ed. 2d 411 (1991)). Assuming that Plaintiff could satisfy the first and second elements, he has not alleged any hindrance in these individuals' ability to protect their own interests. In fact, according to Plaintiff's own allegations, one of these Iranian-American faculty members has already been successful in obtaining a judgment against A&T. Because these individuals "are not constrained in bringing suit by any obstacles made known in the [Amended] Complaint,"

9

Freilich, 313 F.3d at 215, these claims, to the extent that they are being asserted on behalf of third persons, will be dismissed. Having dismissed Claims 2 and 15 for lack of standing, the Court now turns to Defendants' argument that the portion of Claim 1 alleging violations of Plaintiff's "academic freedom," and Claims 5, 7, 8, and 13 alleging civil rights violations under § 1983 and retaliation pursuant to Title VII, should be dismissed for failure to state a claim under Rule 12(b)(6).

C. Failure to State a Claim Under Rule 12(b)(6)

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. However, the Court notes that Plaintiff is proceeding *pro se*. As such the Court is required to construe Plaintiff's pleading liberally and hold it to a less stringent standard than those drafted by attorneys to allow for the development of a potentially meritorious claim. Boag v. MacDougall, 454 U.S. 364, 365, 102 S. Ct. 700, 701, 70 L. Ed. 2d 551 (1982); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[t]he requirement of liberal

10

construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." Oehlson v. Powers, No. 8:06-1060, 2006 WL 2077005, *2 (D.S.C. July 24, 2006) (citing Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990)). Keeping these standards in mind, the Court will now address Plaintiff's remaining claims.

1. Plaintiff's Claim for Alleged Violations of his "Academic Freedom"

In Claim 1, Plaintiff attempts to assert a claim for violations of his "academic freedom." As previously discussed, the portion of Claim 1 that is based on allegations of discrimination that were the subject of litigation in Salami I is barred by res judicata. However, Claim 1 also appears to be based in part upon allegations of discrimination which took place following the conclusion of Salami I, including Plaintiff's loss of tenure, denial of travel requests, low salary raise, and teaching assignments. Defendants argue that Claim 1, to the extent that it is not barred by res judicata, should nevertheless be dismissed because it does not state a claim that is recognized by law.

Claim 1 of Plaintiff's Complaint purports to assert a cause of action for "[v]iolation of [p]laintiff's [a]cademic [f]reedom." Specifically, Plaintiff alleges that his academic freedom has been violated through systematic discrimination, harassment, and retaliation by A&T. In support of this claim, Plaintiff cites sections from the Code of the Board of Governors of A&T concerning nonspecific "academic freedom." It is unclear what exactly Plaintiff is alleging in this claim, but it appears to the Court that he is asserting that his "academic freedom" was violated by acts of alleged discrimination and retaliation. The Court concludes that to the extent

11

that this claim asserts an alleged violation of Plaintiff's "academic freedom," Plaintiff has failed to state a claim recognized by law. While there is a right to academic freedom, it does not stand alone; rather, it is associated with the First Amendment right to freedom of speech. See generally, Bd. of Regents v. Southworth, 529 U.S. 217, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000). Plaintiff has not alleged such a claim or any facts that would support it. Therefore, to the extent that it alleges a violation of Plaintiff's nonspecific "academic freedom," Plaintiff's Claim 1 will be dismissed for failure to state a claim upon which relief may be granted.

2. Plaintiff's Claims for Violation of his Civil Rights

Though Plaintiff's only reference to 42 U.S.C. § 1983 appears in the jurisdictional allegations, the Court will construe Claims 3 through 14 which allege violations of Plaintiff's civil rights as claims being filed pursuant to § 1983. However, because the Court has already determined that Claims 1, 2, 3, 4, 6, 9, 10, 11, 12, 14, and 15 are subject to dismissal as barred by res judicata, or for lack of standing or failure to state a claim, the Court will only address the Defendants' arguments as to Plaintiff's remaining claims: Claims 5, 7, 8 and 13 pursuant to § 1983.[4]

Defendants argue that to the extent that Plaintiff seeks monetary damages, his § 1983 claims against A&T and Monroe in his official capacity as Dean of the College of Engineering are barred by the Eleventh Amendment. First, with regard to A&T, "[u]nder the Eleventh Amendment, 'a State cannot be sued directly in its own name regardless of the relief sought,' absent consent or permissible congressional abrogation." Ballenger v. Owens, 352 F.3d 842, 844

---

[4] See supra note 2 and accompanying text.

(4th Cir. 2003) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106, 87 L. Ed. 2d 114 (1985)). The Court notes that Plaintiff has not alleged that A&T has consented to suit, thereby waiving its Eleventh Amendment immunity. Second, with regard to Monroe, "for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." Ballenger, 352 F.3d at 845. Furthermore, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). Therefore, neither A&T nor Monroe in his official capacity are subject to suit under § 1983. See N.C. Gen. Stat. § 116-4 (naming A&T as a constituent institution of the University of North Carolina system); Huang v. Bd. of Governors, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990) (recognizing that the University of North Carolina and its officials in their official capacities are alter egos of the State and not "persons" under § 1983); Googerdy v. N.C. Agric. & Tech. State Univ., 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (holding A&T is an alter ego of the state and not a person under § 1983).[5] Consequently, to the extent that Claims 5, 7, 8 and 13 allege causes of action pursuant to § 1983 against A&T and Monroe, those claims will be also dismissed.

---

[5] Of course, a state official may be sued in his official capacity for injunctive or other prospective relief from ongoing violations of federal law. Will, 491 U.S. at 71 n.10, 109 S. Ct. at 2312 (recognizing that a state official in his official capacity can be sued under § 1983 for prospective relief because official-capacity actions for prospective relief are not treated as actions against the State); Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908) (finding exception to Eleventh Amendment immunity for state officials in actions for prospective relief for on-going violations of federal law). However, it does not appear from the Amended Complaint that Plaintiff is seeking any injunctive relief against Defendants.

3. Plaintiff's Claims Under Title VII

Although not specifically stated, Claims 3 through 14 also appear to assert claims against Defendants pursuant to Title VII. Again, because the Court has already determined that Claims 1, 2, 3, 4, 6, 9, 10, 11, 12, 14, and 15 are subject to dismissal as barred by res judicata, or for lack of standing or failure to state a claim, the Court will only address the Defendants' arguments with regard to Title VII as to Plaintiff's remaining claims: Claims 5, 7, 8 and 13 alleging retaliation pursuant to Title VII.[6]

First, the Court notes that Defendants have not moved to dismiss Plaintiff's Title VII Claims 5, 7, 8, and 13 against A&T. However, Defendants have moved to dismiss Plaintiff's Title VII Claims 5, 7, 8 and 13 against Monroe. In that regard, Defendants argue that Monroe cannot be held liable under Title VII and that, therefore, any Title VII claims against him should be dismissed. The Fourth Circuit has joined other circuits in holding that "supervisors are not liable in their individual capacities for Title VII violations." Lissau v. Southern Food Serv., 159 F.3d 177, 181 (4th Cir. 1998); see also Guseh v. N. C. Cent. Univ., 423 F. Supp. 2d 550, 556 n.1 (M.D.N.C. 2005) (finding dean of university not liable under Title VII). Accordingly, Plaintiff's Title VII claims against Monroe will be dismissed. However, because Defendants have not moved to dismiss the Title VII claims against A&T which are not barred by res judicata, Claims 5, 7, 8, and 13 alleging Title VII claims against A&T will go forward at this stage of the lawsuit.

4. Plaintiff's Claim for Punitive Damages Under Title VII

Plaintiff also seeks punitive damages pursuant to Title VII. Defendants argue that

---

[6] See supra note 2 and accompanying text.

14

Plaintiff's claim against A&T should be dismissed because government agencies are immune to punitive damages under Title VII. Defendants are correct that Plaintiff may not recover punitive damages through his Title VII claims against A&T. See 42 U.S.C. § 1981a(b)(1) (barring Title VII recovery of punitive damages from a government or government agency); see also, Googerdy v. N.C. Agric. & Tech. State Univ., 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (holding that the defendant, an alter ego of the State of North Carolina, is immune from punitive damages). Accordingly, Plaintiff's claim for punitive damages against A&T under Title VII will be dismissed. Further, because the Court has held that all of Plaintiff's Title VII claims against Monroe must be dismissed, Plaintiff's claim for punitive damages against Monroe pursuant to Title VII will also be dismissed.

III. CONCLUSION

In summary, the following claims will be dismissed: (1) to the extent that they raise claims and issues which were previously litigated in Salami I, Claims 1, 3, 4, 6, 9, 10, 11, 12, and 14 against A&T and Monroe will be dismissed as barred by res judicata and /or collateral estoppel; (2) to the extent that Plaintiff is attempting to bring Claims 2 and 15 on behalf of third parties, those claims will be dismissed for lack of standing; (3) to the extent that a portion of Claim 1 did not appear to be barred by res judicata, the remainder of that claim is dismissed for failure to state a claim upon which relief may be granted; (4) to the extent that Claims 5, 7, 8, and 13 allege Claims against A&T and Monroe in his official capacity pursuant to 42 U.S.C. § 1983, those Claims will be dismissed as barred by the Eleventh Amendment; (5) to the extent that Claims 5, 7, 8 and 13 allege Title VII claims against Monroe, those Claims will be dismissed

15

because he is not a proper defendant; (6) Plaintiff's claim for punitive damages under Title VII against A&T will be dismissed because A&T is immune from punitive damages under Title VII; and (7) Plaintiff's claim for punitive damages under Title VII against Monroe will be dismissed because he is not a proper defendant.

Furthermore, to the extent that Plaintiff's remaining claims, that is, Claims 5, 7, 8, and 13 alleging retaliation under Title VII against A&T, are not the subject of a motion to dismiss, they will move forward at this stage of the proceedings. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This the 1st day of August, 2008.

/s/ James A. Beaty
United States District Judge